## Richmond

### JAMES EDWARD WRIGHT

### V.

### COMMONWEALTH OF VIRGINIA

June 12, 1981.

Record No. 801057.

Present: All the Justices.

*G. Rodney Sager (Monahan & Sager,* on brief), for appellant.
*James E. Kulp, Deputy Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

POFF, J., delivered the opinion of the Court.

A jury convicted James Edward Wright of possession of heroin with intent to distribute. The trial court confirmed the verdict and imposed a sentence of 10 years' imprisonment and a $10,000 fine. On appeal, we consider whether the trial court should have suppressed the heroin seized from the defendant's person in a warrantless search.

George C. Robinson, Jr., a detective attached to the vice division, received a telephone call at 6:00 p.m. on November 8, 1979 advising that "a delivery of dope" would be made at Tweedie's Record Rack at 6:30 p.m. The caller said that the delivery would be made by the defendant and Robert Lewis in a "green Eldorado with a brown top". Robinson was familiar with the defendant and his car, and he recognized the caller as an informant who had furnished information leading to convictions in two narcotics cases. Enlisting the aid of several officers, Robinson left headquarters, drove a distance of 23 or 24 city blocks, and parked at a point two blocks from Tweedie's. At 6:30 p.m., Detective Tabb, stationed near Tweedie's, notified the other officers by radio that two men in a green Eldorado with a brown roof had arrived at the scene. As the police converged, Lewis emerged from the car and, with some of the officers in pursuit, ran into Tweedie's. Robinson and other officers went to the car, ordered the defendant to get

out, searched his person, seized a quantity of heroin from his jacket pocket, and placed him under arrest.

At the hearing on the defendant's motion to suppress, the officers testified that the defendant had made no attempt to flee or to discard anything in his pockets, and they acknowledged that the object of their search was heroin rather than weapons. Asked if he had made an "attempt to get either an arrest warrant or a search warrant", Robinson replied, "I didn't have time."

Asserting that the warrantless search and arrest violated his Fourth Amendment rights, the defendant argues that the officers lacked probable cause to search or arrest and that nothing in the record supports any of the recognized exceptions to the warrant requirements.

As the defendant points out, the Supreme Court has defined and we have consistently applied a "two-prong test" for determining probable cause to search and seize; to establish probable cause based upon an informant's tip, the prosecution must show "underlying circumstances" sufficient to support the informant's conclusions and the conclusion of the police that the informant "was 'credible' or his information 'reliable'." *Aguilar* v. *Texas,* 378 U.S. 108, 114 (1964). This standard applies to a search or arrest made by an officer without benefit of a warrant as well as to a search or arrest made pursuant to a warrant issued by a magistrate. *Whiteley* v. *Warden,* 401 U.S. 560 (1971).

The defendant contends that the Commonwealth failed to prove that the informant was credible. The evidence shows, he says, that "[t]he reliability of the informant . . . is seriously questionable." In pretrial testimony, Detective Robinson acknowledged that, on previous occasions, the informant had furnished information about other suspects which he had been unable to verify. The defendant believes that this "neutralized" the informant's credibility. We disagree. The content of a tip may prove to be unverifiable for many reasons, but that does not mean that the information was not true when given or that the informant is not trustworthy. When, as here, an informant has a record of furnishing reliable reports, an officer is justified in crediting a new report without engaging in a statistical balancing act. *See State* v. *Kaukani,* 577 P.2d 335 (Hawaii 1978).

Turning to the other prong of the *Aguilar* test, the defendant argues that the police acted without knowledge of any "circumstances supporting the validity of the informer's conclusion",

and, accordingly, acted without probable cause. But even when an informant fails to state the source of his information, what he says may be sufficient to satisfy the test if he describes "the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli* v. *United States,* 393 U.S. 410, 416 (1969).

Thus, if the information supplied is sufficiently detailed, it may support an inference that it was acquired by personal observation or otherwise reliably acquired and, if so, this is a circumstance sufficient to satisfy this prong of the *Aguilar* test. *See Andrews* v. *Commonwealth,* 216 Va. 179, 183, 217 S.E.2d 812, 815 (1975). *See also Fagan* v. *Commonwealth,* 220 Va. 692, 261 S.E.2d 320 (1980); *McKoy* v. *Commonwealth,* 212 Va. 224, 183 S.E.2d 153 (1971). We believe the details furnished here support such an inference.

 Even if the tip was insufficient for that purpose, it was sufficient for investigatory purposes. A law enforcement officer has a duty to conduct lawful investigations of reliable reports of law violations. The probable cause standard for a search or an arrest does not apply to an investigation. An officer has the right to make an "investigatory stop" of a person if he has "articulable reasons", or "founded suspicion", or "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States* v. *Cortez,* 449 U.S. 411, 417 (1981). *See also United States* v. *Brigoni-Ponce,* 422 U.S. 873, 884 (1975); *Lawson* v. *Commonwealth,* 217 Va. 354, 357, 228 S.E.2d 685, 687 (1976). Clearly, Detective Robinson was justified in investigating the report he received.

The investigation consisted of a surveillance of the place the informant said the crime would occur. The events and circumstances the investigating officers observed there verified the informant's report in every material detail. At that point, the officers, trained and experienced in crime control, had probable cause to believe the defendant was participating in a felony committed in their presence and, consequently, had the right to make a warrantless arrest. *Brinegar* v. *United States,* 338 U.S. 160 (1949); *Bryson* v. *Commonwealth,* 211 Va. 85, 86-87, 175 S.E.2d 248, 250 (1970). Since the warrantless arrest was lawful, the warrantless search of the defendant's person incident to that arrest

was lawful, whether the object of the search was weapons or evidence. *Chimel* v. *California,* 395 U.S. 752, 763 (1969); *Draper* v. *United States,* 358 U.S. 307, 314 (1959). Where, as here, the product of the search was not essential to probable cause to arrest and "the formal arrest followed quickly on the heels of the challenged search of [the defendant's] person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." *Rawlings* v. *Kentucky,* 448 U.S. 98, 111 (1980).

■ We conclude, therefore, that the search of the defendant's person was lawful under the "search incident" exception to the warrant requirement. We hold further that it was lawful under the "exigent circumstances" exception. "Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation." *Roaden* v. *Kentucky,* 413 U.S. 496, 505 (1973). Detective Robinson received the tip at 6:00 p.m. The crime was to occur 30 minutes later at a point 23 or 24 blocks distant from police headquarters. If he was to make the necessary investigation, intercept the suspects while the reported crime was in progress, and preserve the evidence of that crime, he had to act "now or never". Had he failed to act as he did, he would have been derelict in his duty.

Finding no error below, we will affirm the judgment.

*Affirmed.*