## Richmond

## WILLIAM ALEXANDER CARTER

v.

## COMMONWEALTH OF VIRGINIA

No. 0374-88-2

Decided January 9, 1990

COUNSEL

Patricia L. Harrington, Assistant Public Defender, for appellant.

Robert B. Condon, Assistant Attorney General (Mary Sue Terry, Attorney General; Mildred B. Cain, Assistant Attorney General, on brief), for appellee.

OPINION

BENTON, J.—William A. Carter was convicted by a judge sitting without a jury of possession of cocaine. He asserts that the trial judge erred in refusing to suppress evidence and statements obtained as a result of a warrantless search of his person. We agree and reverse the conviction.

Officer Eugene Provost was the only witness who testified at the suppression hearing. Provost testified that he received information from Detective P. H. Brunson that an informant had reported that a black male, dressed in a black and grey jacket and jeans, was selling drugs on the northwest corner of Second and Clay streets. Provost testified that Brunson described the informant and said the informant was reliable. However, Provost was never told the informant's name.

Provost and Officer R. T. Mayo proceeded to the area and saw Carter, who matched the informant's description. Carter was standing on the street corner amid a group of approximately six persons. While waiting for assistance, Provost and Mayo observed the group from half a block away but perceived no unusual behavior. After additional units arrived, Provost approached Carter, placed him against a wall, and patted him for weapons. Provost found no indication of weapons. At that point, Mayo indicated to Provost that Carter was "definitely the party." After Provost "searched Carter and didn't find anything," Mayo "said again, 'that's definitely the party.'" Provost then discovered a zippered pocket in the sleeve of Carter's jacket. A search of the pocket revealed packets of white powder, subsequently found to be cocaine.

The Commonwealth concedes that the search of Carter's person exceeded the limits of a *Terry* stop, but argues that the information provided by the informant, coupled with the officers' observations, established probable cause to arrest Carter. The Common-

wealth further argues that the search of Carter's person was valid as incident to his lawful arrest. *See Wright v. Commonwealth*, 222 Va. 188, 278 S.E.2d 849 (1981). Thus, we are asked to determine whether, at the time Provost conducted the search which revealed the cocaine, he had probable cause to believe that an offense had been committed which would have justified arresting Carter. We conclude that he did not.

▮▮▮ " '[T]he test of constitutional validity [of a warrantless arrest] is whether at the moment of arrest the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense has been committed.' " *DePriest v. Commonwealth*, 4 Va. App. 577, 583-84, 359 S.E.2d 540, 543 (1987) (quoting *Bryson v. Commonwealth*, 211 Va. 85, 86-87, 175 S.E.2d 248, 250 (1970)). Probable cause to arrest must exist exclusive of the incident search. *Bryson*, 211 Va. at 87, 175 S.E.2d at 251. So long as probable cause to arrest exists at the time of the search, however, it is unimportant that the search preceded the formal arrest if the arrest " 'followed quickly on the heels of the challenged search.' " *Wright*, 222 Va. at 193, 278 S.E.2d at 852-53 (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)).

Aside from Provost's statement at the suppression hearing that Brunson told him that the tip came from a reliable informant, the record is silent concerning the reliability of the informant or the officer's experience with respect to the informant. Brunson did not testify at the suppression hearing. Provost testified that he himself had no prior dealings with the informant and that Brunson did not identify the informant. Provost was, therefore, not in a position to give competent testimony concerning the existence of the informant, the informant's reliability, or the informant's basis of knowledge.

The Commonwealth argues that in this case, as in *Draper v. United States*, 358 U.S. 307 (1959), the details of the informant's tip, combined with the officer's observations and verification of those details, provided the necessary probable cause to arrest Carter. We disagree. Significantly, in *Draper*, the record established that the informant's "information had always been found accurate and reliable." *Id.* at 313. The informant was also specifically identified by name on the record. *Id.* at 309. Thus, a known, reliable informant with an established history of accuracy in-

formed the police that Draper "had taken up abode at a stated address in Denver and 'was peddling narcotics to several addicts' " in Denver. *Id.* The informant told the police that Draper left for Chicago on September 6 by train and would be returning by train on the morning of September 8 or 9 with three ounces of heroin. *Id.* Draper was described in detail as "a Negro of light brown complexion, 27 years of age, 5 feet 8 inches tall, weigh[ing] about 160 pounds . . . wearing a light colored raincoat, brown slacks and black shoes." *Id.* at 309 n.2. The informant also stated that Draper would be carrying a tan zipper bag and would be walking fast. *Id.* at 309. Thus, in *Draper*, the established reliability of the named informant, the level of detail of the tip, combined with the officer's corroboration of those details, gave rise to probable cause to arrest. *Id.* at 313.

By contrast, in the present case, the informant's reliability was not established on this record. The informant, who remained unnamed, told the police only that "a black male" dressed in "a black and grey jacket and jeans" was "selling drugs on the northwest corner of Second and Clay Streets." The informant did not identify the type of drugs being sold. When the officers proceeded to the area, they observed a person matching this general description standing on the corner with several other people, but observed no behavior which would indicate drug distribution. According to Provost, "[i]t was just a group of people standing on the corner." *See Sibron v. New York*, 392 U.S. 40, 62 (1967) (no probable cause to arrest where officer merely observed man talking to known narcotics addicts but saw nothing pass between them); *DePriest*, 4 Va. App. at 585, 359 S.E.2d at 544 (officer's observations failed to establish probable cause to arrest where officer did not observe exchange of narcotics or object suggesting narcotics).

Based upon the totality of circumstances, no reasonable officer in this position would be justified in making an arrest. Nothing in the pat down, or in Carter's behavior when approached by Provost and Mayo, provided the officers with additional information giving rise to probable cause to arrest. Because the search of Carter's person which revealed the cocaine was undertaken in the absence of any constitutional justification, the evidence obtained thereby should have been suppressed.

*Reversed and remanded.*

Cole, J., and Duff, J., concurred.