COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Fitzpatrick and Annunziata
Argued at Richmond, Virginia


GUY C. AMBURGEY, JR.

MEMORANDUM OPINION[*] BY
v.        Record No. 2503-96-2        JUDGE JOHANNA L. FITZPATRICK
                                         SEPTEMBER 23, 1997
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
William H. Ledbetter, Jr., Judge

Muriel-Theresa Pitney, Senior Assistant
Public Defender, for appellant.

Eugene Murphy, Assistant Attorney General
(James S. Gilmore, III, Attorney General, on
brief), for appellee.


On September 30, 1996, Guy C. Amburgey, Jr. (appellant) was
convicted of operating a motor vehicle after having been declared
an habitual offender in a manner such as to endanger life, limb
or property (second offense) in violation of Code § 46.2-357.  On
appeal, he argues that the trial court erred in finding the stop
of his car reasonable based upon information provided to the
police by an unnamed citizen.  For the reasons that follow, we
reverse the decision of the trial court.

I.

The facts of this case are not in dispute.  At about
1:00 a.m. on November 29, 1995, Deputy Sheriff Larry Lambrose
(Lambrose) of the Spotsylvania Sheriff's Department was on duty
in a marked police car.  A woman in a vehicle stopped him by

                  [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

flashing her lights and honking her horn at him.  Lambrose had never seen or met this woman prior to this time.  The informant told Lambrose that she had been at a local bar with her boyfriend until they argued and she left the bar.  Additionally, she told Lambrose that her boyfriend and another man had been drinking, would be in a black, two-door Ford, and would be traveling east on Route 3 toward Fredericksburg.  The informant indicated that the man who owned the vehicle and who would be driving had a suspended license, and that the passenger would be her boyfriend.  Although she gave the tag number of the car, Lambrose did not attempt to independently determine whether the owner of the car had a suspended license.

The informant provided no names or physical descriptions of the people in the car, nor did she say how she knew the driver was suspended.  Lambrose testified at the suppression hearing that "[s]he didn't give me any description at all.  She just advised there would be two fellows in the car and that the owner of the vehicle should be driving the car."  The woman did not state how much or for how long these men had been drinking or whether they were intoxicated.  A car matching the description passed, and she identified it as the car she described previously.  Lambrose followed the car for approximately four minutes.  He observed no erratic driving behavior and nothing illegal or defective about the car, its tags, stickers, or equipment.  He stopped the car, and the driver admitted he was an

habitual offender.

Prior to trial, appellant moved the court to suppress the information obtained as a result of Lambrose's stop.  The court denied the motion.

## II.

Appellant argues that the officer did not have a reasonable articulable suspicion that the driver of the car was committing any offense.  We agree.

> "[T]o justify an investigatory stop of a vehicle, the officer must have some reasonable, articulable suspicion that the vehicle or its occupants are involved in, or have recently been involved in, some form of criminal activity."  Logan v. Commonwealth, 19 Va. App. 437, 441, 452 S.E.2d 364, 367 (1994). "[R]easonable suspicion depends upon the content of information [obtained by the police] as well as its reliability."  Gregory v. Commonwealth, 22 Va. App. 100, 107, 468 S.E.2d 117, 121 (1996) (citing Alabama v. White, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990)).  "In determining whether an 'articulable and reasonable suspicion' justifying an investigatory stop of the vehicle exists, courts must consider 'the

3

totality of the circumstances -- the whole picture.'" Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989) (quoting United States v. Sokolow, 490 U.S. 1, 8, 109 S. Ct. 1581, 1585 (1989)). "The circumstances we may consider include the characteristics of the area where the stop occurs, the time of the stop, whether late at night or not, as well as any suspicious conduct of the person accosted such as an obvious attempt to avoid officers or any nervous conduct on the discovery of their presence."

Gregory, 22 Va. App. at 107, 468 S.E.2d at 121 (quoting Smith v. Commonwealth, 12 Va. App. 1100, 1103, 407 S.E.2d 49, 51-52 (1991) (citations omitted)).

The instant case is controlled by the rationale of Beckner v. Commonwealth, 15 Va. App. 533, 425 S.E.2d 530 (1993). In Beckner, an unidentified driver pulled his car behind a police cruiser and flashed his lights to get the officer's attention. The officer pulled over, and the other driver pulled alongside. The driver indicated that "there was a white female, who did not have a driver's license, at a nearby gas station . . . pumping gas into a 1966 Chevrolet." Id. at 534, 425 S.E.2d at 531. Based on this information, the officer located and approached the

defendant, and requested her license.  First, we determined that, under the circumstances of that case, the face-to-face confrontation between the informant and the police officer provided some indicia of reliability.  See id. at 535, 425 S.E.2d at 532.  However, "[d]espite some indicia of the informant's reliability, the basis of knowledge of the informant's tip . . . is still questionable."  Id. at 536, 425 S.E.2d at 532.  "If no basis of knowledge is stated in the [informant's] report, it is unreliable and cannot be used to support an investigatory stop."  Id.  Thus, we held that in a case where the proof of criminal conduct required the informant to know the status of the defendant's driver's license, "[t]he informant must provide some basis for his knowledge before the police officer relies upon it as being reliable enough to support an investigatory stop."  Id. at 537, 425 S.E.2d at 533.

The instant case reveals the same flaw as in Beckner:  the officer had no knowledge of the basis of the informant's tip. While the informant predicted that a black Ford would be driving past and would be occupied by two men, her tip was insufficient to establish the reliability of the underlying information that the driver was suspended.  See Hardy v. Commonwealth, 11 Va. App. 433, 435, 399 S.E.2d 27, 28 (1990).  The informant neglected to tell Lambrose how she knew the driver had a suspended license. The statement alone was not sufficiently reliable to justify Lambrose's actions.

5

Alternatively, the reliability of an informant's tip may be established if "[s]ignificant aspects" of the information are "independently corroborated." Bulatko v. Commonwealth, 16 Va. App. 135, 137, 428 S.E.2d 306, 307 (1993). Here, however, Lambrose did not independently corroborate the driver's status. Without independent corroboration or knowledge of the basis for the tip, the information was not sufficiently reliable to support an investigatory stop.

Thus, we hold that the officer lacked a reasonable articulable suspicion to effectuate this stop. Although face-to-face, the informant was anonymous, the details were "innocent," and the uncorroborated tip failed to indicate a

foundation for the knowledge that the driver was suspended.

Accordingly, we reverse the decision of the trial court.

<u>Reversed.</u>